JUDGE'S COPY

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JAN 14 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT

|  |  |  |
|---|---|---|
| AVCO CORPORATION, a Delaware corporation, | ) ) | 08cv0314 |
| Plaintiff, | ) ) | JUDGE KENNELLY |
| v. | ) ) | MAG. JUDGE BROWN |
| APS AVIATION, LLC, a Michigan limited liability company, and DANIEL WIRT, | ) ) ) | |
| Defendants. | ) ) | |

F I L E D

JAN 14 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

**NOTICE OF FILING**

TO:   Douglas B. Wexler, Esq.
Wexler & Associates
55 W. Wacker, 9th Floor
Chicago, Illinois 60601

Brandt R. Madsen
Michael S. McGrory
Madsen, Farkas & Powen, LLC
20 South Clark Street
Suite 1050
Chicago, IL 60603

PLEASE TAKE NOTICE that on the 14TH day of January, 2008 we filed with the Clerk of the United States District Court for the Northern District of Illinois via the electronic filing system, *AVCO CORPORATION'S VERIFIED COMPLAINT FOR DECLARTORY AND INJUNCTIVE RELIEF*, a copy of which is attached and hereby served upon you.

Respectfully Submitted,

AVCO CORPORATION

By:   s/ Edward R. Moor   *Edward R Moor*
One of its attorneys

Thomas H. Neuckranz, ARDC #: 2039206
Edward R. Moor, ARDC #: 6205169
Thomas C. Koessl, ARDC #: 6239337
Jordon S. Steinway, ARDC#: 6284065
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606
Phone: 312.443.3200
Fax:   312.630.8500

## CERTIFICATE OF SERVICE

I, Carolyn A. Meyn, a non-attorney, under penalty of perjury under the laws of the United States of America hereby certify that on January 14, 2008, I electronically filed *AVCO CORPORATION'S VERIFIED COMPLAINT FOR DECLARTORY AND INJUNCTIVE RELIEF* with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Douglas B. Wexler, Esq.
Wexler & Associates
55 W. Wacker, 9th Floor
Chicago, Illinois 60601

Brandt R. Madsen
Michael S. McGrory
Madsen, Farkas & Powen, LLC
20 South Clark Street
Suite 1050
Chicago, IL 60603

_____ /s/　*Carolyn A. Meyn*　_____

Document #: 763167

2



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAN 1 4 2008
Jan 14 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| AVCO CORPORATION, a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | )  **08cv0314** |
| | ) |
| APS AVIATION, LLC, a Michigan limited liability company, and DANIEL WIRT, | )  **JUDGE KENNELLY** )  **MAG. JUDGE BROWN** ) |
| Defendants. | ) |

## AVCO CORPORATION'S
### VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, AVCO CORPORATION ("Avco"), by and through its attorneys, Eric R. Lifvendahl, Thomas C. Koessl and Jordon S. Steinway of WILLIAMS MONTGOMERY & JOHN LTD., for its Verified Complaint for Declaratory and Injunctive Relief, states as follows:

### INTRODUCTION

1.     Avco brings this action for declaratory judgment pursuant to 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure.  As set forth herein, there is an actual, substantial, and continuing justiciable controversy between Avco and Defendants of sufficient immediacy and reality so as to require a declaration of rights by this Court.

2.     Avco seeks a declaration that Defendants' proposed destructive testing of an aircraft engine part manufactured by Avco will result in the spoliation of material evidence relevant to a likely soon-to-be filed product liability action against Avco and other potential defendants.  In addition, Avco also seeks the issuance of injunctive relief to enjoin the contemplated destructive testing of the pertinent engine, which is currently in Defendants' possession.  The destructive inspection and testing is scheduled to take place on **January 15, 2008**.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the present matter pursuant to 28 U.S.C. §1332(a), as this action is between citizens of different states and the amount in controversy in the underlying lawsuit, which is the subject of this action, exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(a), as at least one of the Defendants is subject to personal jurisdiction in this judicial district at the time of the filing of this action.

## THE PARTIES

5.      Avco is a Delaware corporation.

6.      Upon information and belief, Defendant APS Aviation, LLC ("APS") is a Michigan limited liability company that maintains it principle place of business in Ingham County, Michigan.  APS is believed to be the registered owner of the "Piper" airplane and the engine that is the subject of this dispute.

7.      Upon information and belief, Defendant Daniel Wirt ("Wirt") is a resident of Illinois.

## GENERAL ALLEGATIONS

8.      Avco operates a division called Lycoming Engines, which was operated previously under the division name Textron Lycoming.  Avco's Lycoming Engines division is a manufacturer of reciprocating aircraft engines.

9.      Avco's Lycoming engine, a carbureted Lycoming O-540-E4B5 (the "Engine"), was installed in a Piper PA-32-260, N3946W (the "Airplane").

10.     Upon information and belief, APS owns title to the Airplane and the engine/components in question.

2

11.     On January 24, 2006, Wirt was piloting the Airplane when it allegedly experienced a loss of engine power and was forced to land in Jackson, Michigan.

12.     During the forced landing, the Airplane impacted trees and terrain.

13.     Wirt claims to have suffered injuries in the January 24, 2006 accident.

14.     After the accident, the Airplane was removed from the scene and placed in APS' hangar.

15.     Thereafter, Wirt retained counsel. APS, Wirt and/or one of their representatives have stated their intention to investigate the alleged cause(s) of the accident. Thereafter, Wirt will likely file suit against Avco and other potential manufacturer defendants on a product liability/negligence theory.

16.     In order for Avco to properly defend against Wirt's product liability lawsuit, it must perform functional testing of the Engine and related components.

17.     On September 25, 2007, Wirt, through his counsel, first notified Avco and other potential product liability defendants of his intention to conduct an engine "tear-down" (*i.e.*, destructive testing of the Engine). In that regard, he forwarded a proposed testing protocol to be used for the engine teardown, and solicited comments in response. (*See* September 25, 2007 letter, attached hereto as Exhibit 1.)

18.     Wirt's proposed tear-down will destroy the Engine and related components and render it impossible for Avco to ever conduct functional testing of the Engine that is necessary for it to defend against any allegations of defect that Wirt may make in his product liability lawsuit. (*See* Affidavit of Warren Wandel ("Wandel Aff."), attached hereto as Exhibit 2, at ¶5.)

19.     Although Avco explained its position on the testing issue to Wirt and his counsel, Wirt has rejected Avco's request to permit functional testing of the Engine and related components first, before the destructive testing Wirt is scheduled to occur.

3

20.    Presently, an inspection of the Airplane wreckage (*i.e.*, destructive tear-down testing) is scheduled for Tuesday, January 15, 2008.

## Count I – DECLARATORY JUDGMENT

21.    Avco repeats and realleges the allegations of Paragraphs 1 through 20 as though fully set forth herein.

WHEREFORE, Avco respectfully requests that this Court enter Judgment against Defendant as follows:

(1)    Granting declaratory judgment in favor of Avco, pursuant to 28 U.S.C. §2201, finding and declaring that the proposed destructive testing by Defendants will result in the spoliation of material evidence; and

(2)    Declaring that functional testing is possible, and that Avco is entitled to conduct functional tests prior to any teardown or destructive disassembly of the engine and/or related components; and

(3)    Granting Avco any other and further relief this Court deems just and appropriate.

## Count II – INJUNCTIVE RELIEF

22.    Avco repeats and realleges the allegations of Paragraphs 1 through 21 as though fully set forth herein.

23.    Wirt and/or APS have a duty under the law to maintain and preserve the Engine and related components as evidence.

24.    Avco will be immediately and irreparably harmed unless: (1) the scheduled January 15, 2008 destructive testing of the Engine and related components is enjoined indefinitely; and (2) Avco is permitted to fully survey and inspect the Engine and related components to determine the feasibility and scope of functional testing.

25.    Avco would be harmed more by the absence of injunctive relief than Defendants would be harmed if injunctive relief is granted.

26.    The public would not be harmed if Avco is granted injunctive relief.

27.    Avco has no adequate remedy at law to prevent the scheduled and imminent January 15, 2008 destructive testing of the Engine and related components.

WHEREFORE, Avco respectfully requests that this Court enter Judgment against Defendant and issue a Temporary Restraining Order and a preliminary injunction as follows:

A.    Prohibiting Wirt and/or APS and/or anyone else acting on their behalf or at their direction from going forward with the a tear-down of the Engine and its components;

B.    Permitting Avco and other interested parties and their representatives, including Wirt and his counsel, to conduct a complete, non-destructive functional testing of the Engine and related components at a date and time upon which all interested parties can agree; and

C.    Permitting Avco to perform any agreed-upon functional testing before Wirt is permitted to conduct the tear-down of the Engine and its component parts. To the extent the parties are unable to agree on the subject of what functional testing is possible and appropriate for the Engine and its component parts in their present condition, this Court's order should provide that the parties may bring this matter to this Court for a decision prior to any tear-down or destructive testing of the Engine and its component parts.

Respectfully Submitted,

AVCO CORPORATION

By:_____s/ Edward R. Moor_____  Edward R Moor
One of its attorneys

Thomas H. Neuckranz, ARDC #: 2039206
Edward R. Moor, ARDC #: 6205169
Thomas C. Koessl, ARDC #: 6239337
Jordon S. Steinway, ARDC#: 6284065
WILLIAMS MONTGOMERY & JOHN LTD.
20 North Wacker Drive, Suite 2100
Chicago, Illinois 60606
Phone: 312.443.3200
Fax:    312.630.8500

## VERIFICATION

Under penalties as provided by law, the undersigned certifies that the statements set forth in this Verified Complaint are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

AVCO CORPORATION

By: _____

Title: ASS'T CORP. SECRETARY

6

# EXHIBIT 1

LAW OFFICES
## SCHADEN, KATZMAN, LAMPERT & McCLUNE
100 WEST BIG BEAVER ROAD, SUITE 130
TROY, MICHIGAN 48084-5283

JOHN D. McCLUNE

MR. SCHADEN ADMITTED IN COLORADO, MICHIGAN & ILLINOIS ONLY
MR. KATZMAN ADMITTED IN MICHIGAN & FLORIDA ONLY
MR. LAMPERT ADMITTED IN COLORADO & MICHIGAN ONLY
MR. McCLUNE ADMITTED IN MICHIGAN ONLY
MR. NELSON ADMITTED IN COLORADO ONLY
MS. SCHADEN ADMITTED IN COLORADO ONLY

TELEPHONE (248) 258-4800
FACSIMILE (248) 258-2825
www.schadenlaw.com

9596 JEFFCO AIRPORT AVENUE
BROOMFIELD, COLORADO 80021
(303) 465-3663 • FAX (303) 465-3864

1100 LEE WAGENER BLVD., SUITE 200
FT. LAUDERDALE, FLORIDA 33315
(954) 359-4455 • FAX (954) 359-4477

September 25, 2007

Lisa Salazar, Esq.
General Counsel
The New Piper Aircraft Co.
2926 Piper Drive
Vero Beach, FL 32906

Mr. Anthony Cassese
Vice President
United States Aviation Underwriters, Inc.
Insurer of Avco and Textron Lycoming
199 Water Street
New York, NY 10038-3526

Textron Lycoming
652 Oliver Street
Williamsport, PA 17701

Scott R. Torpey, Esq.
Jaffe, Raitt, Heuer & Weiss, P.C.
27777 Franklin Road
Suite 2500
Southfield, MI 48034-8214

Precision Airmotive Corporation
14800 40th Avenue NE, Bldg. D
Marysville, WA 98271

Precision Airmotive LLC
Individually and as Successor-in-interest to
Precision Airmotive Corporation
14800 40th Avenue NE, Bldg. D
Marysville, WA 98271

Mr. Greg Pike
Charles Taylor Aviation
411 Aviation Way
Suite 250
Frederick, MD 21701





LAW OFFICES
SCHADEN, KATZMAN, LAMPERT & McCLUNE

Lisa Salazar, Esq.
September 25, 2007
*Re:*    *Piper PA-32-260, federally registered as N3946W; January 24, 2006, accident near*
         *Jackson, MI*
Page 2

Clark Nichols, Esq.
Perkins Coie
1201 Third Avenue
Suite 4800
Seattle, Washington 98101-3099

Beacon Aviation of Michigan Inc.
661 Eden Road
Mason, MI 48854

    *Re:*    *Piper PA-32-260, federally registered as N3946W; January 24, 2006, accident*
             *near Jackson, MI*

    Our firm represents Daniel Wirt, who was seriously injured in the above referenced
aircraft accident.  We will be inspecting the aforementioned aircraft's engine and related
components on November 09, 2007, beginning at 9:00 a.m. local time at The New Firewall
Forward, 5212 Cessna Drive, Loveland, CO, 80538; Phone: 800-444-0556.  Enclosed is a
protocol that will be used during the inspection.  You are welcome to attend.

                        Very truly yours,

                        John D. McClune

JDM/jmp
cc:    Douglas Wexler, Esq.
       Donald Sommer, Aeroscope, Inc.
Enclosure

# EXHIBIT 2

July 11, 2007

John McClune
100 Big Beaver Road
Suite 130
Troy, Michigan 48084

RE:    Wirt
         Aircraft: PA-32-360
         Registration: N3946W
         Date of Accident: 01/24/2006


Dear Mr. McClune:

The following is our proposed protocol to be used for the engine teardown in the aforementioned case. The inspection will commence on 11/09/2007 and take at least one day to complete.

Conditions of Inspection:
Inspection will be scheduled for at least one full day, with any extension by agreement of all parties involved. The length of the workday will be determined as the inspection progresses. The inspection will not be terminated due to travel schedules. As with any investigation of this type, findings at one stage of the inspection may suggest changes at another step or require additional steps. Such changes or additions are acceptable upon agreement of the parties present.

We are requesting the following protocol for the inspection of the engine:

1. Protocol will be agreed upon by all parties prior to teardown. Once the inspection begins, changes to the protocol will be agreed upon by all parties prior to any modification of protocol. Photographs will be taken throughout the inspection/teardown.
2. All parties will meet at 0900 hours.
3. Airline schedules will not be set up so as to interfere with the inspection. For planning purposes only, at least one full day will be devoted to the teardown.
4. **Engine disassembly:**
   □ Set engine up on test stand.
   □ Remove any remaining baffling.
   □ Remove any remaining accessories.
   □ Remove exhaust and intake.
   □ Remove and label spark plugs by number and top/bottom.
   □ Remove rocker shafts, rocker arms and pushrods. Keep rocker arms labeled in accordance with cylinder number.
   □ Remove starter adaptor, oil filter adapter and tachometer generator.
   □ Remove all cylinders.



- Remove pistons by driving out wristpin and caps.
- Remove valve lifters.
- Drive out through studs.
- Remove all case bolts.
- Split case.
- Remove connecting rods from crankshaft.
- Remove intake and exhaust valves from cylinders.
- Note: if any valve is stuck, it will be removed by cutting the valve guide out.

**Magnetos:**

Magnetos will be removed from the engine (if still installed) and tested on a test bench. After testing, magnetos will be opened for visual inspection. Non-destructive disassembly will be conducted.

**Carburetor:**

Remove carburetor from engine
Loosen lock washers on throttle body to bowl screws
Loosen throttle body to bowl screws, checking torque
Disassemble 2 halves
Remove needle valve and float assembly for inspection

If anyone disagrees with the proposed protocol, please submit any comments or modifications as soon as possible.

Don Sommer
Aeroscope

# EXHIBIT 3

## AFFIDAVIT OF WARREN V. WANDEL

| | | |
|---|---|---|
| STATE OF TEXAS | ) | |
| | ) | SS. |
| COUNTY OF TARRANT | ) | |

I, Warren V. Wandel, being duly sworn according to law, hereby depose and state:

1.     I am over the age of 21, I am competent to testify, and I have personal knowledge of the matters I discuss in this Affidavit. If called to testify in this matter, I would do so as follows:

2.     My professional resume is attached hereto as **Exhibit A**. My relevant qualifications and experience in aviation accident investigation include:

- National Transportation Safety Board ("NTSB") — Air Safety Investigator (March 1980 — June 1995, Retired). In my employment with the NTSB, I completed over 725 aircraft accident investigations involving all areas of the United States aviation system, including 22 major investigations as Investigator-in-Charge ("IIC"). In my tenure as Air Safety Investigator, I developed detailed knowledge of NTSB regulations, Board Orders, policy, Federal Air Regulations, investigative procedures and protocol, aircraft operations and mechanics, and engineering. During this period I taught investigative procedures, organization and examination protocol, including engine investigation in several nationally recognized training courses, including the NTSB Aircraft Accident Investigation School and the University of Southern California Turbine Engine Accident Investigation Course.

- Warren V. Wandel & Associates, Inc. — President and lead investigator (June 1995 — Present). As the president and lead investigator of my own accident

1457597 01

EXHIBIT

3

PENGAD 800-631-6989

investigation firm, I have investigated over 250 aircraft accidents and incidents for clients including airlines, airframe and engine manufacturers, maintenance facilities, flight schools, pilots, operators, and governments. I am responsible for all phases of the investigative and analytical processes, including initial review of technical data, determining the scope of investigation, identifying necessary technical data, collection and analysis of data, and report preparation and presentation. These assignments have included the development of detailed protocols for submittal and approval by the court and involved parties and the execution of examination and functional testing of accident-involved engines and components.

- Bell Helicopter International –- Aviation Safety Specialist (December 1977 — March 1979). In my position as Aviation Safety Specialist, I was responsible for the investigation of aircraft accidents and incidents, the review of accident reports, and conducting special studies on significant accident trends.

- United States Army   Aviation Safety Officer (December 1976 — January 1993, Active and Reserve). As an Aviation Safety Officer for the Army, I investigated aircraft accidents and incidents and reviewed accident reports for various Army major commands.

- Throughout my 31-year career as an aircraft accident investigator and reconstructionist, I attended 22 different courses and seminars concerning the various aspects of investigative procedures and have been called upon to test, disassemble, and evaluate the functionality and mechanical status of hundreds of engines.

1457597.01

3.    I have reviewed the following documents concerning the January 24, 2006, forced landing incident involving defendant Daniel J. Wirt and the Avco Corporation ("Avco") Lycoming carbureted engine O-540-E4B5, serial number L-10416-40 (the "Engine"):

- NTSB Factual Report Aviation, NTSB ID: CHI06LA072, concerning the 1967 Piper PA-32-260, FAA registration number N3946W, serial number 32-895, as well as color photos taken by the NTSB and/or Avco;

- Avco's Complaint for Injunctive and Other Relief;

- Defendant Wirt's July 11, 2007, letter and proposed engine tear-down protocol;

- Precision Airmotive LLC's October 8, 2007, letter and proposed engine test protocol;

- Avco's October 12, 2007, letter and proposed engine functional test protocol;

- Defendant Wirt's October 12, 2007, letter rejecting the proposed engine test protocol advanced by Precision Airmotive LLC ("Precision"); and

- Avco's October 25, 2007, letter to Wirt's counsel proposing an initial non-destructive survey of the Engine and suggesting that the parties formulate suitable functional testing followed by a tear-down protocol.

4.    I understand the issue before this Court is whether Avco should be permitted to perform functional testing of the Engine and its component parts before Wirt performs his proposed engine tear-down protocol, which involves the complete disassembly of the Engine and related components and, in particular, requires the removal and disassembly of the carburetor and removal of the needle valve and float assembly for inspection.

5.    The generally accepted practice and procedure followed by various key players in the industry, including the NTSB, the Federal Aviation Administration ("FAA"), and the U.S.

1457597 01

Army, in aircraft accident investigations is to, whenever possible, conduct functional testing of any engine, engine accessory, or engine component that is suspected of having a causal connection to the accident **before** that engine, accessory, or component is disassembled in a manner that would prevent a subsequent functional test. The purpose of any post-accident examination of an aircraft engine is to determine whether it was capable of producing enough power to sustain flight and, if not, to determine the cause(s). It is always preferable to functionally test an engine or its components against published factory standards prior to disassembly, as these tests establish a base-line as to the component's operability in an "as-found" condition. The normal evolution of a complete investigation would be:

    a.    To conduct a detailed visual examination of the engine and its system components to determine the amount of impact and post-accident damage they have sustained and an evaluation as to whether the engine and/or its components can be functionally tested;

    b.    To identify the components capable of being functionally tested and the specifications and equipment that will be used to do this; to conduct the tests and document the results; and, if the engine and/or its components do not meet functional specifications, to then disassemble them and examine them for mechanical integrity; and

    c.    To identify the components that are too badly damaged to functionally test and disassemble them and document their mechanical integrity and, if desired, to disassemble the components that passed functional testing.

6.    I have reviewed Wirt's proposed engine tear-down protocol (Torpey Aff. **Exhibit B**). It appears from the proposed tear-down protocol that the theory of liability Wirt may

- 4 -

propose will center on those components of the Engine. It is therefore crucial that Avco be permitted to perform functional testing of these components to determine how they perform under actual operating conditions and whether they meet certain required standards. As I will explain, performing a tear-down of the Engine will prevent Avco from performing functional testing in a meaningful manner.

7.    For the carburetor in particular, there are several methods of functional testing that Avco could employ before tear-down of the Engine without adversely impacting Wirt's desire to completely disassemble the carburetor for inspection. The first of these methods would be to start the Engine and test the carburetor's functional capabilities. From my review of the NTSB report, however, this method of functional testing is impossible because the Engine appears to have sustained too much damage to allow it to be started and run. Another functional testing method involves replacing any damaged accessory parts on the Engine without altering the Engine's mechanic configuration, starting the Engine if possible, and testing the carburetor's functional capabilities while the Engine is running. In this case, the evidence I reviewed indicates that the modifications and replacement of damaged parts necessary to run the Engine would substantially alter its "pre-accident" configuration and cast doubt on the ensuing test results. A third functional testing method involves removing the carburetor as a whole from the Engine and installing it on an identical engine or an identical Piper model airframe and testing the carburetor's functional capabilities to determine whether it works properly. A final method of functional testing involves removing the carburetor from the Engine and testing it on a properly calibrated flow bench. None of these test methods would alter the mechanics of the carburetor or in any way impact any subsequent disassembly and inspection that might occur after the functional testing.

- 5 -

8.      Wirt's proposed engine test protocol involves the complete disassembly of the Engine and its parts first, which will irretrievably prevent any effort to functionally test the Engine in its present state, the starting point of any meaningful functional testing. Even the most careful and methodical disassembly and reassembly of an engine can, unbeknownst to even the mechanic, damage component parts and drastically change the engine's functioning capability from that which it exhibited before disassembly. The simple act of disassembly can damage or alter parts or alter their alignment in relation to other parts. Reassembling an engine can also result in damage or alteration to components or may result in a reassembly that does not match the engine's original configuration and irreversibly alters components. For instance, the torque of replaced screws may be different from before disassembly, which can affect engine functionality. For all of these reasons, it is simply impossible to return the Engine to its "as-received" condition in order to attempt the functional testing that must be the first step in a sound and complete accident investigation.

9.      For these reasons, functional testing must be performed before any engine tear-down occurs. When done properly, functional testing will have no destructive impact on an engine or its component parts and will not change or alter findings that may be made during a subsequent engine tear-down.

10.     Moreover, this case presents special circumstances for which the parties should account before a suitable testing protocol of any kind is developed. This Engine was damaged in the incident and been stored in unknown conditions for some time now. It is not known whether significant corrosion of parts has occurred or even whether the functional testing that Wirt's counsel has proposed (i.e., dynamometer testing) can be effectively performed due to the Engine's condition. Before any testing occurs, the parties should be permitted to engage in a

- 6 -

non-destructive survey of the Engine and its components to determine their current state and the kind of functional testing the Engine's condition will allow and the most suitable functional testing for that condition.

11.     The NTSB conducts its investigations in accordance with the applicable Code of Federal Regulations and its published investigative procedures. Those procedures provide for the designation of parties to each investigation. Such parties, if required, must be qualified to offer technical assistance and must comply with the Board's procedures and scope and operate under NTSB guidance. Parties are precluded from conducting testing or investigation outside the Board's guidance or conducting investigation for the purpose of litigation.

12.     A review of the NTSB Factual Report of this accident revealed the investigation was conducted within its scope and in accordance with its procedures. The NTSB investigated the engine to the extent that the investigator in charge deemed necessary to determine the reason for the reported engine power loss. The fact that litigation may potentially arise after the completion of their investigation changes the complexion of the investigation outside of the Board's mandate, but in no way should this new investigative effort disregard the accepted methodology for accident investigation.

**FURTHER AFFIANT SAYETH NOT.**

_____
Warren V. Wandel

Subscribed and sworn to before me this ___30___ day of October 2007.

_____
Notary Public in and for the State of _Texas_
My Commission Expires: ___05-30-2010___



MICHELLE R. PETERSON
MY COMMISSION EXPIRES
May 30, 2010

1457597 01

# WARREN V. WANDEL

2101 Wilson Drive
Arlington, Texas 76011
(817) 274-9001    (817) 274-4250 fax    WVWASSOC@TX.RR.COM

## RÉSUMÉ

## AIRCRAFT ACCIDENT INVESTIGATION

Over the past 24 years, served as an aircraft accident investigator with Warren V. Wandel & Associates, Inc., the U.S. National Transportation Safety Board, Bell Helicopter International, and the U.S. Army. During this period, assigned to investigate of over 1,000 aircraft accidents, involving major catastrophic air carrier and commuter, general aviation, helicopter, military/government, and foreign aircraft. Individual assignments have included serving as technical consultant, testifying expert, investigator-in-charge, group chairman, U.S. accredited representative to foreign investigations, analyst, coordinator, recorder, and investigating officer.

Warren V. Wandel & Associates, Inc. - President and lead investigator (June 1995 - Present). The firm was established in June 1995, following retirement from the National Transportation Safety Board. Responsible for all phases of the investigation and analytical process. This includes initial review of the technical data, determination as to the scope of the investigation, identification of needed technical data, analysis and report preparation and presentation. In cases of large aircraft or complex investigations, duties have also included identifying and vetting the necessary technical specialists required and acting as the investigation coordinator throughout the course of the investigation. Requires the ability to collect and correctly analyze all of the salient facts of an accident and their presentation to the client in an honest and unbiased manner with realistic options as to the possible resolution of the case. Responsibilities also include the preparation of expert reports, trial exhibits and testifying in deposition and at trial. During the over 250 cases investigated over the past 9 years, our clients have included airlines, airframe and engine manufacturers, maintenance facilities, flight schools, pilots, operators and governments.

National Transportation Safety Board - Air Safety Investigator (March 1980 - June 1995, Retired) Responsible for all aspects of the investigation of assigned accidents, from initial response to presentation of the final report to the Board, including the development of safety recommendations. Served as the investigator-in-charge with the responsibility of organizing each investigation, identifying qualified personnel for participation on the investigation team, and managing the total investigative effort. Required detailed knowledge of NTSB regulations, Board Orders, policy, Federal Air Regulations, investigative procedures and protocol, aircraft operations, design, engineering, and the aviation system infrastructure.

Assignment included 24 hour on call duty with the need to respond to any accident site on short notice, often in hostile physical and environmental conditions. Field assignments could vary in length for two days to several weeks. Duties also included tactful interaction with federal, state, and local law enforcement personnel, briefing the national and local news media, industry and legal representatives, and the public, often in hostile and

adversarial situations. Additional responsibilities included preparing for and giving deposition testimony in legal proceedings and representing the Board in various meetings with government and industry representatives.

Over 725 aircraft accident investigations completed involving all areas of the United States aviation system.

| | |
|---|---|
| 22 | Major Investigations as Investigator-In-Charge |
| 126 | Air Carrier/Commuter Investigations |
| 119 | Helicopter Accident Investigations |
| 23 | Military/Government Aircraft Investigations |
| 12 | Foreign Investigations as U.S. Accredited Representative |
| 16 | Mid-air Collision Investigations |
| 60 | Safety Accomplishments and Recommendations |
| 11 | Superior Performance and Special Act/Service Awards, plus numerous Letters of Commendation |

Bell Helicopter International - Aviation Safety Specialist (December 1977 - March 1979) Responsibilities included the investigation of assigned accidents/incidents, review of Iranian military accident reports, and conducting special studies on significant accident trends.

U.S. Army - Aviation Safety Officer (December 1976 - January 1993, Active & Reserve) Responsible for investigating assigned accidents/incidents and reviewing accident reports for various Department of the Army major commands.

## AVIATION ACCIDENT PREVENTION

Since qualifying as an Aviation Safety Officer with the U.S. Army, assignments have included responsibilities in all areas of aviation safety, accident prevention, and aviation safety program management and training.

National Transportation Safety Board - As an Air Safety Investigator/Investigator-In-Charge, responsibility included the analysis and identification of all safety related issues involved in assigned accidents. Each safety deficiency required identification of root problems, research, formulation of solutions, and presentation to the cognizant authorities. Significant safety issues identified and corrected as a result of investigations have included both fixed wing and helicopter systems, subsystems, and engines, flight and maintenance operations, the national air traffic control system, weather dissemination, and safety information distribution. These actions have effected safety improvements within numerous aviation organizations and directly affected over 20,000 individual aircraft.

2

Bell Helicopter International - As an Aviation Safety Specialist, responsible for the aviation safety programs of assigned units for the contractor to the U.S. Army and the Government of Iran.

Aviation Safety Officer, Depot Facility, responsible for the development and implementation of the flight and airfield safety programs.

Chairman, Aviation Safety Council
Member, Aircraft Configuration Board
Member, Aircraft Accident Investigation Board
Member, Safety of Flight Board
Aviation Safety Advisor, Forward Area Support Units
Aviation Safety Advisor, Imperial Iranian Army Aviation Commander
Aviation Safety Advisor, Imperial Flight Hangar (Shah Flight)
Founder & Editor, FlightFax corporate aviation safety magazine
Researcher & Author, AH-1J Accident Rate Special Study

U.S. Army - As an Aviation Safety Officer, responsibilities included the implementation and management of the Army Safety Program within assigned units and maintaining flight currency as an Army Aviator. Assignments covered periods of Active and Reserve duty.

351st Army Security Agency Company - As the unit safety officer, maintained an accident/incident free record during the five year assignment.

5th U.S. Army - Aviation Safety Staff Officer, responsible to the General Staff for the oversight, auditing, and approval of safety programs and training for all of the reserve aviation units within the thirteen state command.

Department of the Army Research Command - Aviation Safety Staff Officer, responsible to the Aviation Officer and General Staff for all aspects of the command's aviation safety program. Served as aircraft accident investigation advisor.

U.S. Army Aviation System's Command - Aviation Life Support/Safety Staff Officer, responsible for the development of ALSE training programs and equipment usage promotion. Developed and published index on all available information regarding procurement, usage, and maintenance of the Army's Aviation Life Support Equipment.

1984 Summer Olympics/Department of Defense - Aviation Safety Officer, one of two officers responsible for the aviation/operational safety program for the Olympic security support package. Group provided air support for the Olympic Committee and security forces with 105 military and civil aircraft over a period of eight weeks and flew over 5,000 accident/incident free hours. Letters of Commendation from the Los Angeles Olympic Organizing Committee and the Department of Defense.

## AVIATION/PILOT EXPERIENCE

Graduated as one of three Honor Graduates from the U.S. Army Aviation School, 1968. Designated as a Senior Army Aviator. Federal Aviation Administration ratings include commercial pilot, airplane, single & multi-engine, rotorcraft-helicopter, and instrument privileges. Twenty nine years experience in the aviation field with total flight time in excess of 3,400 hours, evenly split between fixed and rotary wing aircraft. Flight experience includes general aviation, corporate, international delivery and operations, safety/flight test, combat close air support, gunnery training, and airline operations audit.

Hilltop Lakes Resort - Chief Pilot (1966-1967), responsible for scheduling and flying both corporate single engine and twin engine airplanes.

U.S. Army - Army Aviator (1967-1993, Active & Reserve, Retired), assignments included a combat tour with the 1st Cavalry Division (Airmobile) as an aircraft commander in a close air support unit in the Republic of Viet Nam (1968) and flying assignments with various Reserve aviation units.

Bell Helicopter International - Aviation Safety Specialist, assigned to fly as safety evaluation pilot on all models of the contractor's supported aircraft, including flight test monitoring.

National Transportation Safety Board - Air Safety Investigator, required to maintain currency in fixed and rotary wing aircraft. Assignments included flying accident simulations/reconstruction, performance evaluations, and familiarization training on new aircraft. Responsibility also included flying as an extra crewmember on scheduled air carrier and commuter flights whenever possible.

## AVIATION SAFETY/INVESTIGATION INSTRUCTOR

Experienced as a platform and field instructor/trainer in all areas of safety education. Instructor assignments have been in the areas of aviation safety, operations, accident prevention, investigation techniques and procedures, emergency response, and aviation safety program management. Responsibilities included course development, material selection, scheduling, presentation, and critical evaluations. In addition, responsible for briefing and interacting with all levels of the executive branch of government, the aviation industry, the news media, and the public.

National Transportation Safety Board Aircraft Accident Investigation School - Associate Staff, responsible for the development and presentation of the turbine engine and helicopter investigation courses in the school. Presented classes on other topics as the need arose.

Department of Transportation, Transportation Safety Institute - Associate Staff, responsible for the presentation of NTSB Policy and Procedures class at the Advanced Accident Investigation Course. Presented the NTSB Procedures and Investigation Organization portion of the Rotorcraft Safety and Investigation Course.

University of Southern California - Associate Staff, responsible for developing and presenting both the accident investigation notification, procedures, and organization portion

and the safety data acquisition and analysis portion of the Turbine Engine Accident Investigation Course. In addition, participated as a frequent guest speaker in the Aviation Safety Program Management Course.

Texas A&M University Fire Training Academy - Associate Staff, responsible for training emergency response personnel on NTSB procedures, investigation requirements, site security and safety, and agency coordination.

Dallas/Fort Worth International Airport - Guest Instructor, responsible for presentation of the NTSB Emergency Responders Course to all new hire personnel and contract attendees.

NTSB Emergency Responders Training Program - Co-developer and instructor of a specialized course for presentation to law enforcement and fire personnel with aircraft rescue and fire fighting (ARFF) responsibilities. Course covered aviation accident classifications, response, NTSB responsibility, coordination, site safety and security, and case studies. Over 3,500 ARFF and law enforcement personnel from all major civil airports and armed forces have attended the program since its inception.

Mexico Director General of Civil Aviation (DGAC) Helicopter Safety and Accident Investigation Course - Developer, coordinator, and instructor. Responsible for the development of a specialized course requested by the DGAC of Mexico for presentation to government and military investigators. Course covered all aspects of helicopter accident prevention and investigation. The one-week course was attended by 110 civil and military investigators, safety officers, and operators.

## TECHNICAL EDUCATION

FAA Commercial Pilot, Airplane, Single & Multi-Engine, Instrument, Rotorcraft-Helicopter

Army Aviator (Honor Graduate), U.S. Army Aviation School

Aviation Safety Officer's Course, U.S. Army

Fundamentals of Accident Prevention, U.S. Army

Aircraft Accident Prevention (Full Course), U.S. Army

Jet Engine Accident Investigation Course, U.S. Air Force

Life Support Officer's Course, U.S. Air Force

Aviation Life Support Equipment Officer's Course, U.S. Army

Aircraft Fire Investigation Course, U.S. Air Force

Composite Failure Analysis Symposium, U.S. Air Force

5

NTSB Orientation Program, NTSB Washington, D.C.

Aircraft Accident Investigation Course, NTSB Aircraft Accident Investigation School

Aircraft Accident/Incident Report Writing, NTSB

Fire & Explosion Investigation Course, NTSB/ATF

Foreign Accident Investigation/Notation/Summary Report Writing, NTSB

Technical Report Writing, NTSB

Human Factors Investigation and Reporting, NTSB

Rotorcraft Safety & Accident Investigation Course, DOT-TSI

Hazardous Material's Transportation Safety Course, DOT-TSI

Fundamentals of Composite Technology, ASTM

Human Factors Investigation, University of Southern California

Crash Survival Investigator's Course, Arizona State University

Aircraft Fire and Explosion Investigator's Course, Arizona State University

Airborne Weather Radar Interpretation Seminar, NBAA

Garrett Product Investigation Course, Garrett Turbine Engine Company

Boeing 737-300/400/500 Orientation Course, Boeing Commercial  Airplane Company

Fokker F-100 Systems Orientation Course, U.S. Air

Bell 222 Qualification Course, Flight Safety International

Bell 206L-IV Pilot Qualification Course, Bell Training Academy

Flight Safety International Pilot's Review of Proficiency "2000"

Bell 407 Pilot Qualification Course, Bell Training Academy

Trinity University, Undergraduate Program

University of Texas – San Antonio, Undergraduate Program (Completed 106 hours
toward a BBA in Accounting and Management)

**PUBLISHED PAPERS**

Participation of Parties In NTSB Aviation Accident Investigations, published in the *Journal of Air Law and Commerce*, 3rd quarter 1987.

Use of Voice Stress Analysis In a General Aviation Fatal Accident With Suspected Pilot Incapacitation, M. Brenner, S. J. H. Veronneau, W. V. Wandel, published in the Aerospace Medical Association *Journal of Aviation, Space and Environmental Medicine*, May 1993.

**ORGANIZATION MEMBERSHIP**

International Society of Air Safety Investigators - Member,
    and Past President, D/FW Regional Chapter

American Society of Safety Engineers - Member

American Institute of Aeronautics and Astronautics - Member

Army Aviation Association of America - Member

Disabled American Veterans - Life Member

American Legion - China Post #1 – Member

Vietnam Helicopter Pilots Association - Member

# EXHIBIT 4



Clark R. Nichols
PHONE: (206) 359-8731
FAX: (206) 359-9731
EMAIL: CNichols@perkinscoie.com

1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
PHONE: 206.359.8000
FAX: 206.359.9000
www.perkinscoie.com

October 8, 2007

**VIA E-MAIL AND U. S. MAIL**

John D. McClune
Schaden, Katzman, Lampert & McClune
100 W. Big Beaver Rd., Suite 130
Troy, MI 48084

Re:   **1967 Piper PA-32-260, FAA Registration N3946W**
      **January 24, 2006 accident near Jackson, MI**
      **Pilot:  Daniel Wirt**

Dear John:

Thank you for your letter dated September 25, 2007, advising us that you intend to
inspect the aircraft's engine and related components.  The proposed protocol that you
included in your letter envisions destructive disassembly of the engine, carburetor and
magnetos before other interested parties have had an opportunity to conduct functional
testing of the engine and accessories in their present "run-as-received" condition.

Precision Airmotive LLC objects to further disassembly of the engine or carburetor prior
to functional testing.  The disassembly inspection described by Mr. Sommer in his letter
to you dated July 11, 2007, would destroy probative evidence of the current condition of
the engine and carburetor, would constitute spoliation of evidence, and would unfairly
and irreparably prejudice Lycoming, Precision Airmotive, Piper Aircraft and any other
product manufacturer or maintenance facility that may be named as a defendant in any
future lawsuit that Mr. Wirt may commence.  Functionally testing the engine,
components and accessories will yield the most probative evidence of their current
operating condition and identification of any condition (including impact damage) that
effects their current ability to function properly.

ANCHORAGE · BEIJING · BELLEVUE · BOISE · CHICAGO · DENVER · LOS ANGELES · MENLO PARK
OLYMPIA · PHOENIX · PORTLAND · SAN FRANCISCO · SEATTLE · SHANGHAI · WASHINGTON, D.C.
Perkins Coie LLP and Affiliates

**EXHIBIT**
4

John D. McClune
October 8, 2007
Page 2

I am enclosing for your consideration a proposed protocol for functionally testing of the
engine and carburetor prior to the disassembly inspection proposed by Mr. Sommer.

Please confirm by October 17, 2007, that you are cancelling the inspection at The New
Firewall Forward so that interested parties may reach an agreement for functionally
testing of the engine, carburetor, magneto – and other component or accessory that an
interested party wants to functionally test. Alternatively, please advise me and other
recipients of this letter if you are unwilling to postpone the destructive disassembly
proposed by Mr. Sommer absent a court order to preserve evidence.

In conclusion, Precision Airmotive LLC does not object to Mr. Sommer's proposed
protocol as described in his letter dated June 11, 2007, *if the inspection occurs after the
engine and carburetor have been functionally tested* as described in the proposed
protocol that I am enclosing with this letter. You may have Mr. Sommer and other
consultants and representatives attend and photograph all stages of functional testing that
we propose, and you may propose additional functional tests if you so desire. Our goal is
to determine the current run-as-received condition of the engine, carburetor and other
components/accessories.

Best regards,

Clark

Clark Reed Nichols

Enclosure


cc:    Lisa Salazar, Esq.
       Anthony Cassese, Vice President
       Timothy Harrington, Esq.
       Scott R. Torpey, Esq.
       Mr. Greg Pike
       Beacon Aviation of Michigan, Inc.
       The New Firewall Forward (Attn: Mark Seader, CEO)

### Engine Test Protocol

**Engine Mount:**

Standard engine mounting on the O-360-J2A is provided by four mounting bosses integral with the crankcase.

**Engine Cooling:**

Provision must be made to provide adequate cooling air to the engine to maintain the cylinder head temperatures below 435 deg F during the test sequence. During normal engine operation, the volume of air required will not exceed 2500 CFM and 5.5 inches water pressure drop across the cylinders.

**Instrumentation:**

The following parameters should be measured. Instrumentation should be suitable and calibrated to an industry reference.

Engine speed – RPM

Engine manifold pressure - in Hg

Cylinder head temperatures – deg F

Induction air temperature – deg F

Induction air pressure – in Hg

Fuel inlet pressure – psi

Fuel flow – lbs/hr

Fuel temperature – deg F

Engine airflow – lbs/hr

Oil pressure – psi

Oil temperature – deg F

**Power Absorption:**

The engine test may be accomplished with a fixed or controllable pitch propeller capable of operation up to the rated speed on the engine. Normal engine rating is 145 hp between 2400-2700 RPM. For the purpose of this test, rated power conditions will be 2400 RPM, 26 in Hg manifold pressure.

**Test Limits:**

Test fuel is 100/130 or 100 LL aviation gasoline. Engine oil should be 15W-50 or other suitable grade of ashless dispersant oil. An oil cooler suitable for 7 gallons per minute and heat rejection not to exceed 425 BTU/min. Maximum permissible oil temperature is 245 deg F. Normal oil pressure should be between 55-95 psi. At startup with cold oil, maximum oil pressure is 115 psi. Fuel inlet pressure should be 2-5 psi. Cylinder head temperature should not exceed 475 deg F, recommended 435 deg F. Lycoming can provide Engine Specification No 2644-A for the O-360-J2A upon request.

**Test Program:**

Assuming the engine is in runnable condition the following test schedule should be accomplished:

Engine start

| 1200 RPM | 5 minutes |
| 1500 RPM | 5 minutes |
| 2000 RPM | 10 minutes |

| | | |
|---|---|---|
| 2400 RPM | 10 minutes | 26 in Hg manifold pressure |
| 1500 RPM | 5 minutes | |
| 1200 RPM | 2 minutes | |
| 1000 RPM | slow acceleration | |
| 1000 RPM | rapid acceleration | |

Shutdown

Depending on test results additional test points may be added if agreed to by all parties. If the engine is not initially found to be in a runnable condition, spark plugs may be removed and cleaned if necessary. Additional trouble shooting and correction may be accomplished if agreed to be all parties.

**Functional Test of Model MA-4-5 Carburetor:**

If the engine is not in a condition where it may be functionally tested, including functional testing with the installation of "slaved" accessories to replace inoperable/damaged accessories, the carburetor shall be separately functionally tested prior to disassembly. The carburetor shall be removed from the engine and functional tests shall include:

- Float Valve and Seat Test as described in the Aircraft Carburetor Service Manual, which is the final functional test following overhaul and/or repair of the carburetor to determine that the carburetor is functioning properly and may be returned to service;

- Installing the carburetor on an engine test cell at the engine manufacturer's facility (Lycoming Engines) or another engine repair facility with appropriate test cell equipment (e.g. Lycon);

- Installing the reassembled carburetor on a Piper model PA-32-260 "Cherokee Six" aircraft engine to functionally test the carburetor's ability to meter fuel to the engine throughout the engine's normal operating range of power setting on the ground and in flight (after the carburetor has passed the Float Valve and Seat Test described in the Aircraft Carburetor Service Manual); and

- Flow testing of the carburetor on a flow bench at a facility that has the appropriate calibrated equipment.

# EXHIBIT 5



# Jaffe

**JAFFE RAITT HEUER & WEISS**
*A Professional Corporation*

27777 FRANKLIN ROAD, SUITE 2500 • SOUTHFIELD, MICHIGAN 48034-8214
PHONE 248.351.3000 • FAX 248.351.3082
www.jaffelaw.com

Scott R. Torpey*
Direct: 248.727.1461
storpey@jaffelaw.com

*Admitted to Practice Law:*
*California, Illinois, Michigan,*
*New York, Ohio, & Washington DC*

October 12, 2007

*By Fax: 248-258-2825 and*
*Email: jdmcclune@aol.com*
John D. McClune
Schaden, Katzman, Lampert & McClune
100 West Big Beaver Road, Suite 130
Troy, Michigan 48084

     Re:   Daniel Wirt

Dear John:

    We have received your letter of September 25, 2007 attaching the proposed protocol dated July 11, 2007 of Don Sommer with respect to the November 9, 2007 engine tear down in Colorado. In Mr. Sommer's proposed protocol, he states that if anyone disagrees with the proposed protocol, comments should be submitted.

    On behalf of my client, Lycoming, we object to the proposed protocol since it does not provide for any functional testing of the aircraft engine and/or its component parts, including the carburetor, prior to any disassembly or destructive testing such as that contemplated by the inspection protocol which you provided. Accordingly, Lycoming submits the attached functional testing protocol which we propose be performed at Lycoming or other acceptable location **prior** to commencement of the work proposed by Mr. Sommer in his July 11, 2007 protocol.

    Finally, Lycoming believes that if you proceed with the teardown activities listed in Mr. Sommer's July 11, 2007 protocol without first performing the engine functional testing we propose, that would constitute a spoliation of evidence and pose potentially irreparable harm to Lycoming's ability to conduct its investigation and defense with regard to any future claims brought against it with regard to the accident in which your client was involved.



EXHIBIT

6

John D. McClune
October 12, 2007
Page 2

Once you have had a chance to review our attached engine testing protocol, please give me a call to discuss the matter further. Thank you for your anticipated cooperation.

Very truly yours,

**Jaffe, Raitt, Heuer & Weiss**
Professional Corporation

Scott R. Torpey

SRT/pln
Enclosure
c:     Distribution List (attached)

1448782.01

# Engine Test Protocol
## O-540-E4B5, S/N L-10416-40

**Engine Mount:**

Provision is made for rear type dynafocal mounting on the O-540-E4B5 provided by four mounting brackets, two at the top rear of the crankcase sections and two at the rear of the oil sump.

**Engine Cooling:**

Provision must be made to provide adequate cooling air to the engine to maintain the cylinder head temperatures below 435 deg F during the test sequence. A maximum of 4500 CFM of cooling air at seal level density and a pressure differential of 5.5 inches of water is required for this engine.

**Instrumentation:**

The following parameters should be measured. Instrumentation should be suitable and calibrated to an industry reference.

> Engine speed – RPM
> Engine manifold pressure – in Hg
> Cylinder head temperatures – deg F
> Induction air temperature – deg F
> Induction air pressure – in Hg
> Fuel inlet pressure – psi
> Fuel flow – lbs/hr
> Fuel temperature – deg F
> Engine airflow – lbs/hr
> Oil pressure – psi
> Oil temperature – deg F

**Power Absorption:**

The engine test may be accomplished with a fixed or controllable pitch propeller capable of operation up to the rated speed on the engine. Normal engine rating is 260 hp at 2700 RPM.

**Exhaust System:**

A representative exhaust system may be used for this test provided the exhaust back pressure does not exceed 2 inches of mercury at any cylinder. As an alternative, straight exhaust pipes may be utilized, a minimum of 8 inches in length.

**Test Limits:**

Engine oil should be 15W-50 or other suitable grade of ashless dispersant oil. An oil cooler suitable for 7 gallons per minute and heat rejection not to exceed 700 BTU/min. Normal oil pressure should be between 60-90 psi. At startup with cold oil, maximum oil pressure is 100 psi. Oil temperature should be maintained within 180-200 degrees F. Maximum permissible oil temperature is 245 deg F.

Test fuel is 100/130 or 100 LL aviation gasoline. Fuel inlet pressure should be 2-8 psi and temperature within 20 degree F of ambient.

Cylinder head temperature should not exceed 500 deg F, recommended between 375-435 deg F for normal operation.

Lycoming can provide Engine Specification No 2318-B for the O-540-E4B5 upon request.

**Test Program:**

Assuming the engine is in runnable condition the following test schedule should be accomplished:

| | |
|---|---|
| Engine start | |
| 1200 RPM | 5 minutes |
| 1500 RPM | 5 minutes |
| 2000 RPM | Magneto Check – note drop on each |
| 2000 RPM | 5 minutes |
| 2400 RPM | 5 minutes |
| 2600 RPM | 10 minutes |
| 2700 RPM | 10 minutes |
| 1500 RPM | 5 minutes |
| 1200 RPM | 2 minutes |
| 1000 RPM | slow acceleration |
| 1000 RPM | rapid acceleration |
| Shutdown | |

Depending on test results additional test points may be added if agreed to by all parties. If the engine is not initially found to be in a runnable condition, spark plugs may be removed and cleaned if necessary. Additional trouble shooting and correction may be accomplished if agreed to be all parties. The test sequence may be stopped at anytime if engine operation is not acceptable.

# EXHIBIT 6

LAW OFFICES
## SCHADEN, KATZMAN, LAMPERT & McCLUNE
100 WEST BIG BEAVER ROAD, SUITE 130
TROY, MICHIGAN 48084-5283

JOHN D. McCLUNE

MR. SCHADEN ADMITTED IN COLORADO, MICHIGAN & ILLINOIS ONLY
MR. KATZMAN ADMITTED IN MICHIGAN & FLORIDA ONLY
MR. LAMPERT ADMITTED IN COLORADO & MICHIGAN ONLY
MR. McCLUNE ADMITTED IN MICHIGAN ONLY
MR. NELSON ADMITTED IN COLORADO ONLY
FRANK COPPOLA, OF COUNSEL

TELEPHONE (248) 258-4800
FACSIMILE (248) 258-2825
www.schadenlaw.com

9595 JEFFCO AIRPORT AVENUE
BROOMFIELD, COLORADO 80021
(303) 465-3663 • FAX (303) 465-3884

1100 LEE WAGENER BLVD , SUITE 200
FT LAUDERDALE, FLORIDA 33315
(954) 369-4455 • FAX (954) 359-4477

October 12, 2007

*Via Email and U.S. Mail*

Clark R. Nichols, Esq.
Perkins Coie
1201 Third Avenue
Suite 4800
Seattle, WA 98101-3099

Re:     *January 24, 2006, Piper Cherokee Six 260 aircraft, N3946W,  accident near Jackson, MI; November 9, 2007, inspection at Firewall Forward*

Dear Mr. Nichols:

Your recently received letter dated October 8, 2007, and proposed alternative protocol contain incorrect statements, would materially alter and destroy evidence as it existed at the time of the accident, and attempts to wrongfully impede our investigation into the cause of the accident.

First of all, your protocol applies to the wrong engine. The Piper Cherokee Six 260 is powered by a six cylinder Lycoming O-540-E4B5 engine, not an O-360 engine. The O-540-E4B5 engine produces around 260 hp, not 145 hp.

Second, you forget that Textron Lycoming and The New Piper Aircraft were "party participants" to the NTSB investigation to my client's exclusion, and performed inspection and analysis without Mr. Wirt's representatives present. Under your letter's premise, everything those party participants did was destructive and/or an alteration of material evidence. Also, Textron Lycoming could have performed the engine testing you suggest during the investigation, but did not.

Third, your attached protocol suggests testing that does not simulate accident conditions, and intimates that if the engine or carburetor does not run they way you or your client wants, your client will add "slave" components until it does—clearly altering and destroying material evidence and the conditions existing at the time of the accident. You mention "installation of 'slaved' accessories" and components to replace inoperable or damaged accessories during functional testing. We will *not* allow you or your client to alter or destroy material evidence just so you can get the engine and/or carburetor to run within certain parameters. This could alter and destroy the conditions existing at the time of the accident, and could fix a pre-accident problem with the engine. We merely sought to inspect and disassemble the components as-is, and test the

EXHIBIT
5

LAW OFFICES
SCHADEN, KATZMAN, LAMPERT & McCLUNE

Clark R. Nichols, Esq.
Re:      *January 24, 2006, Piper Cherokee Six 260 aircraft accident near Jackson, MI*
October 12, 2007
Page 2

mags. The protocol did not anticipate destructive testing. (Of note, you may or may not be aware that Textron Lycoming and/or The New Piper inspected components and tested the mags during the NTSB investigation, including disassembly of the right mag. Again, Mr. Wirt was not invited nor present during that testing or disassembly.) You mention cleaning the spark plugs during testing. However, if the spark plugs are fouled so that the engine does not run, the test should stop. You suggest running the engine with a test club (i.e., dummy propeller) without an ability to properly track hp. However, the better way to attempt to test run an "as-received" engine is on a dynamometer. This way you can keep track of engine parameters. Note, your own protocol later suggests disassembly of the carburetor from the engine, and reinstallation of the carburetor on a test cell or sister Textron Lyoming engine to functionally test the carburetor. However, this does not simulate accident conditions, and could destroy or alter material evidence within the carburetor itself. Be assured, our objective was and remains to attempt to inspect the engine and components in the condition in which they existed at the time of the accident. We will be more than happy to file suit and explain this to a judge if need be.

As a compromise, we are willing to work with you and attempt to conduct an engine dynamometer test in an "as-received" condition at Firewall Forward on November 9, 2007, before inspection and disassembly of the carburetor. You are welcome to participate and record any data you wish during that test should it proceed. After that test or after a determination that a test cannot proceed without materially altering or destroying evidence, we plan to adhere to our proposed protocol, and fulfill our obligation to our client to investigate the cause of the aircraft accident. You and your client are welcome to be present, and videotape or photograph same. It is my hope that all parties present will agree to the protocol as in various past inspections. We can discuss further testing and inspection following the November 9, 2007, inspection. Feel free to give me a call to discuss.

Sincerely,

John D. McClune

JDM/mm
cc:    Donald Sommer
       Douglas Wexler
       Tim Harrington
       Anthony Cassese
       Scott R. Torpcy, Esq.
       Gregg Pike
       Beacon Aviation of Michigan
       Lisa Salazar, New Piper

# EXHIBIT 7

## STATE OF MICHIGAN

## IN THE CIRCUIT COURT FOR THE COUNTY OF INGHAM

Avco Corporation, a
Delaware corporation,

      Plaintiff,

v

APS Aviation, LLC and Daniel J. Wirt,

      Defendants.

_____/

Case No. __07-1583__ -CZ

Hon.      JOYCE DRAGANCHUK

JAFFE RAITT HEUER & WEISS, P.C.
By:   Scott R. Torpey (P36179)
      William D. Adams (P54404)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
(248) 351-3000
(248) 351-3082 (Fax)
Attorneys for plaintiff Avco Corporation

_____/

### COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

**[There is no other pending or resolved civil action
arising out of the same transaction or occurrence
as alleged in this complaint.]**

      Plaintiff Avco Corporation, through its undersigned counsel, complains against

defendants as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Avco Corporation ("Avco") is a Delaware corporation.

2.     Defendant APS Aviation, LLC, ("APS") is a Michigan limited liability company

that maintains it principle place of business in Ingham County, Michigan.

J457393.01

**EXHIBIT**

_1_

3. Defendant Daniel J. Wirt ("Wirt") is a resident of Eaton County, Michigan.

4. This Court has subject matter jurisdiction over this matter. MCL 600.605.

5. Venue in this Court is proper. MCL 600.1621(a).

## FACTS

6. Avco operates a division called Lycoming Engines, which was operated previously under the division name Textron Lycoming. Avco's Lycoming Engines division is a manufacturer of reciprocating aircraft engines.

7. Avco's Lycoming engine, a carbureted Lycoming O-540-E4B (the "Engine"), was installed in a Piper PA-32-260, N3946W (the "Piper").

8. APS is the titled owner of the Piper aircraft and engine/components in question.

9. On January 24, 2006, Wirt was piloting the Piper when it allegedly experienced a loss of engine power and was forced to land in Jackson, Michigan.

10. During the forced landing, the Piper impacted trees and terrain.

11. Wirt is alleged to have suffered injuries in the January 24, 2006, incident.

12. After the incident, the Piper was removed from the scene and placed in APS' hangar.

13. Following the incident, Wirt retained counsel. Upon information and belief, APS Aviation, Wirt and/or his/their representatives are investigating the alleged cause(s) of the accident and considering whether to file suit against Avco and other potential manufacturer defendants on a product liability/negligence theory.

14. In order for Avco to properly defend against Wirt's product liability lawsuit, it must perform functional testing of the Engine and related components.

15.    On September 25, 2007, Wirt, through his counsel, notified Avco and other potential product liability defendants of his intention to conduct an imminent engine tear down (*i.e.,* destructive testing of the Engine) and related components on November 9, 2007. In that regard, he forwarded a proposed testing "protocol to be used for the engine teardown," and solicited comments in response. (**Exhibit 1**: September 25, 2007, letter.)

16.    Wirt's proposed teardown will destroy the Engine and related components and render it impossible for Avco to ever conduct functional testing of the Engine that is necessary for it to test any allegations of defect that Wirt may make in his product liability lawsuit, contrary to Wirt's and/or APS' obligation and duty under the law to maintain and preserve the Engine and related components as evidence.

17.    Although Avco explained its position on the testing issue to Wirt and his counsel, Wirt has rejected Avco's request to permit functional testing of the Engine and related components first, before the destructive testing Wirt has scheduled to occur November 9, 2007.

## REQUEST FOR INJUNCTIVE RELIEF

18.    Avco incorporates the preceding paragraphs as if fully restated herein.

19.    Wirt and/or APS have a duty under the law to maintain and preserve the Engine and related components as evidence; the threatened destructive testing of the Engine and related components clearly violates this duty.

20.    Avco will be immediately and irreparably harmed unless the scheduled November 9, 2007, destructive testing of the Engine and related components is enjoined indefinitely, Avco is permitted to fully survey and inspect the Engine and related components to determine the feasibility and scope of functional testing, the protocol for same and thereafter be permitted to conduct whatever functional testing of the Engine and related components is

necessary before Wirt and/or APS conduct the destructive teardown of the Engine and related components, thus rendering it impossible to conduct any functional testing at all.

21.    Avco would be harmed more by the absence of injunctive relief than Wirt and/or APS would be harmed if injunctive relief is granted. There is no impending statute of limitations requiring the investigation be completed by November 9, 2007 and/or that suit be filed shortly thereafter.

22.    The public would not be harmed if Avco is granted injunctive relief.

23.    Avco has no adequate remedy at law to prevent the scheduled and imminent November 9, 2007, destructive testing of the Engine and related components.

WHEREFORE, Avco seeks the following relief:

A.    Injunctive relief to (i) block the scheduled November 9, 2007, destructive testing of the Engine and related components by Wirt and/or APS, (ii) permit Avco to survey and inspect the Engine and related components to determine whether it is possible to conduct functional testing of the Engine and related components as a whole and/or whether functional testing of individual components is necessary, and (iii) permit Avco to conduct functional testing before Wirt conducts any teardown or other destructive testing of the Engine and/or related components; and

B.    Such other equitable relief to which Avco entitled.

Respectfully submitted,

JAFFE, RAITT, HEUER & WEISS, P.C.

By: _____
        Scott R. Torpey (P36179)
        William D. Adams (P54404)
27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
(248) 351-3000
Attorneys for Plaintiff Avco Corporation

Dated: October 26, 2007

JAFFE RAITT HEUER & WEISS, P.C.

1457393.01

5

# EXHIBIT 8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | | |
|---|---|---|
| APS AVIATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No: U8CH00245 |
| | ) | |
| DANIEL WIRT, | ) | |
| | ) | |
| Defendant. | ) | |

## NOTICE OF FILING

TO:    See Attached Service List

PLEASE TAKE NOTICE that on this 3rd day of January, 2008, we have caused to

be filed with the Circuit Court of Cook County, County Department, Chancery Division,

APS Aviation, LLC's Complaint for Declaratory Judgment, a copy of which is

attached hereto and served upon you herewith.

Respectfully submitted,

APS AVIATION, LLC

By:    _Michael S. McGrory_

Michael S. McGrory

Brandt R. Madsen
Michael S. McGrory
Madsen, Farkas & Powen, LLC
20 South Clark Street, Suite 1050
Chicago, Illinois 60603
Tel: (312) 379-3444
Fax: (312) 379-3443
Attorney Number 37934

EXHIBIT
8

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

APS AVIATION, LLC,                    )
                                      )
        Plaintiff,                    )
                                      )
        v.                            )        Case No:
                                      )
DANIEL WIRT,                          )
                                      )
        Defendant.                    )

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiff, APS AVIATION, LLC, by and through its attorneys, Madsen, Farkas & Powen, LLC, and petitions this Honorable Court, pursuant to 735 ILCS 5/2-701 and 740 ILCS 100/2 *et seq.* for a good faith finding regarding these parties' settlement, and in support thereof states as follows:

1. On January 24, 2006, an airplane piloted by Defendant Daniel Wirt ("Wirt") crashed near Jackson, Michigan. Wirt has alleged that he suffered substantial injuries in the crash.

2. Wirt has represented, through his counsel, that he is currently residing in Cook County, Illinois. Additionally, Wirt's counsel has agreed to waive service of this Complaint and stipulate to the jurisdiction of this Court for the purposes of effectuating this good faith order.

3. Wirt has not yet filed suit in any jurisdiction against any entity for the injuries he alleges to have sustained in the airplane crash. However, several injunctive matters have been filed relative to inspection of the aircraft's engines in various jurisdictions, and all parties have appeared and are represented by counsel in this matter.

4. APS Aviation, LLC ("APS") was a duly organized corporation and owner of the airplane Wirt was piloting; Wirt has asserted a claim against APS based in part on MCLA 259.180a, which Wirt claims transfers liability to an aircraft owner.



5. APS maintained an insurance policy for the operation of the aircraft, with indemnity limits of $100,000.

6. Other interested parties include:

    a. **Avco Corporation ("Avco")**; the engine manufacturer, who has been represented by Scott R. Torpey (P36179); Jaffe, Raitt, Heuer & Weiss, 27777 Franklin Road, Suite 2500, Southfield, MI 48034-8214 and Mary A. Wells, Esq., Wells, Anderson & Race, LLC; 1700 Broadway; Suite 1020; Denver, CO 80209;

    b. **Precision Airmotive, LLC. ("Precision")**; a component part manufacturer; who has been represented by Clark R. Nichols, Esq., Perkins Coy; 1201 Third Avenue; Suite 4800, Seattle, Washington 98101-3099;

    c. **The Piper Aircraft Company ("Piper")**; the manufacturer of the aircraft, represented by Courtney R. Bateman, Esq.; Reed Smith, LLP; 1301 K. Street, NW; Suite 1100-East Tower; Washington, D.C. 20005-3373; and

    d. **Beacon Aviation of Michigan, Inc.**, which performed maintenance/inspection of the aircraft, is represented by Peter Kirchen of Peter T. Kirchen, Esq., Law Offices of Kern and Wooley LLP, 11100 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025.

    e. **Wirt** is represented by John McClune & David Katzman of Shaden, Katzman, Lampert & McClune, 100 West Big Beaver Road, Suite 130, Troy, MI 48084-5283.

    f. **The United States of America**, which, through its agency the Federal Aviation Administration, oversees and regulates civil aviation.

7. Wirt and APS have reached an agreement to settle Wirt's claim against APS.

8. The settlement agreement reached between Wirt and APS provides in pertinent part that APS will: (1) pay its policy limits of $100,000 to Wirt; (2) waive any and all indemnity, subrogation, contribution and related claims against Wirt; and (3) transfer ownership of the airplane wreckage to Wirt.

9. In exchange, Wirt will agree: (1) not to sue APS or related parties only; (2) to release, discharge and hold harmless APS and related parties only from any further liability vis-a vis Wirt (NOTE: the hold harmless is expressly *not* meant to include any claims that may be brought against APS and related parties in future litigation by persons or entities other than Wirt); and (3) to take possession of and to pay all expenses relative to the aircraft and engine wreckage.

10. This settlement has been entered into in good faith, and is reasonable given the limited insurance proceeds available and the severity of Wirt's injuries.

11. This agreement is expressly contingent on this Court's finding that it was entered into in good faith.

12. An executed release containing these provisions will be available for review at the hearing.

13. Wirt has scheduled an inspection of the airplane wreckage for January 15, 2008. However, the wreckage will not be turned over to Wirt unless and until this Court enters a good faith finding.

14. "If the parties to a presuit settlement want to obtain a 'good-faith' order, they ordinarily must...institute a declaratory judgment action (735 ILCS 5/2-701) before they may ask the court to enter a good-faith finding." *In re Guardianship of Babb*, 162 Ill.2d 153, 163, 642 N.E.2d 1195, 1200 (1994).

3

15. In addition to the parties that have appeared in this case, all reasonably identifiable potential defendants to any tort action Wirt may bring, including the New Piper Aircraft Company, the Piper Trust, Avco Corporation, Beacon Aviation, and Precision Airmotive, LLC, have been notified of this Complaint.

WHEREFORE, Defendant, APS respectfully requests that this Honorable Court enter an order finding that the settlement entered into between APS and Wirt was entered into in good faith for purposes of 740 ILCS 100/2 *et seq*, and for any additional relief this Court deems equitable and just.

Respectfully submitted,

APS AVIATION, LLC

By: _____

Michael S. McGrory

Brandt R. Madsen
Michael S. McGrory
Madsen, Farkas & Powen, LLC
20 South Clark Street, Suite 1050
Chicago, Illinois 60603
Tel: (312) 379-3444
Fax: (312) 379-3443
Attorney Number 37934

4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| APS AVIATION, LLC,<br><br>      Plaintiff,<br><br>      v.<br><br>DANIEL WIRT,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No: 08CH00245<br>)   Calendar 15<br>)<br>) |

## EMERGENCY MOTION FOR GOOD FAITH FINDING

NOW COMES Plaintiff, APS AVIATION, LLC, by and through its attorneys, Madsen,

Farkas & Powen, LLC, and moves this Honorable Court, pursuant to 735 ILCS 5/2-701 and 740

ILCS 100/2 *et seq.* for a good faith finding regarding these parties' settlement, and in support

thereof states as follows:

    1.  On January 24, 2006, an airplane piloted by Defendant Daniel Wirt ("Wirt") crashed near

Jackson, Michigan.  Wirt has alleged that he suffered substantial injuries in the crash.

    2.  Plaintiff, APS Aviation, LLC ("APS") was the owner of the airplane Wirt was piloting;

Wirt has asserted a claim against APS based in part on Michigan statute MCLA 259.180a, which

Wirt claims transfers liability to an aircraft owner.

    3.  APS maintained an insurance policy for the operation of the aircraft, with indemnity

limits of $100,000.

    4.  Wirt and APS have reached an agreement to settle Wirt's claim against APS.

    5.  The settlement agreement reached between Wirt and APS provides in pertinent part that

APS will: (1) pay its policy limits of $100,000 to Wirt; (2) waive any and all indemnity,

subrogation, contribution and related claims against Wirt; and (3) transfer ownership of the

airplane wreckage to Wirt.

6.  In exchange, Wirt will agree: (1) not to sue APS or related parties only; (2) to release, discharge and hold harmless APS and related parties only from any further liability vis-a vis Wirt (NOTE: the hold harmless is expressly *not* meant to include any claims that may be brought against APS and related parties in future litigation by persons or entities other than Wirt); and (3) to take possession of and to pay all expenses relative to the aircraft and engine wreckage.

7.  This settlement has been entered into in good faith, and is reasonable given the limited insurance proceeds available and the severity of Wirt's injuries.

8.  This agreement is expressly contingent on this Court's finding that it was entered into in good faith.

9.  An executed release containing these provisions will be available for review at the hearing.

10. Wirt has scheduled an inspection of the airplane wreckage for January 15, 2008. However, the wreckage will not be turned over to Wirt unless and until this Court enters a good faith finding.

11. "If the parties to a presuit settlement want to obtain a 'good-faith' order, they ordinarily must…institute a declaratory judgment action (735 ILCS 5/2-701) before they may ask the court to enter a good-faith finding." *In re Guardianship of Babb*, 162 Ill.2d 153, 163, 642 N.E.2d 1195, 1200 (1994).

12. On January 3, 2008, Plaintiff APS filed a Complaint for a declaratory judgment finding that this settlement is in good faith. (See Complaint, attached as Exhibit 1). Defendant Wirt has waived service of this Complaint and stipulated to the jurisdiction of this Court for purposes of effectuating a finding of good faith.

13. In addition to the parties that have appeared in this case, all reasonably identifiable potential defendants to any tort action Wirt may bring, including the New Piper Aircraft Company, the Piper Trust, Avco Corporation, Beacon Aviation, and Precision Airmotive, LLC, have been notified of the Complaint and Motion for Good Faith Finding.

14. Plaintiff has notified all reasonably identifiable potential parties listed on the attached service list. Those parties include:

    a. **Avco Corporation ("Avco")**, the engine manufacturer, who has been represented by Scott R. Torpey (P36179); Jaffe, Raitt, Heuer & Weiss, 27777 Franklin Road, Suite 2500, Southfield, MI 48034-8214 and Mary A. Wells, Esq., Wells, Anderson & Race, LLC; 1700 Broadway; Suite 1020; Denver, CO 80209;

    b. **Precision Airmotive, LLC. ("Precision")**; a component part manufacturer; who has been represented by Clark R. Nichols, Esq., Perkins Coy; 1201 Third Avenue; Suite 4800, Seattle, Washington 98101-3099;

    c. **The Piper Aircraft Company ("Piper")**; the manufacturer of the aircraft, represented by Courtney R. Bateman, Esq.; Reed Smith, LLP; 1301 K. Street, NW; Suite 1100-East Tower; Washington, D.C. 20005-3373; and

    d. **Beacon Aviation of Michigan, Inc.**, which performed maintenance/inspection of the aircraft, is represented by Peter Kirchen of Peter T. Kirchen, Esq., Law Offices of Kern and Wooley LLP, 11100 Santa Monica Blvd., Suite 700, Los Angeles, CA 90025.

    e. Wirt is represented by John McClune & David Katzman of Shaden, Katzman, Lampert & McClune, 100 West Big Beaver Road, Suite 130, Troy, MI 48084-5283.

    f. **The United States of America**, which, through its agency the Federal Aviation Administration, oversees and regulates civil aviation.

3

WHEREFORE, Defendant, APS respectfully requests that this Honorable Court enter an order finding that the settlement entered into between APS and Wirt was entered into in good faith for purposes of 740 ILCS 100/2 *et seq*, and for any additional relief this Court deems equitable and just.

Respectfully submitted,

APS AVIATION, LLC

By: _____
Michael S. McGrory

Brandt R. Madsen
Michael S. McGrory
Madsen, Farkas & Powen, LLC
20 South Clark Street, Suite 1050
Chicago, Illinois 60603
Tel: (312) 379-3444
Fax: (312) 379-3443
Attorney Number 37934

4

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

APS AVIATION, LLC,                    )
                                       )
            Plaintiff,                 )
                                       )
        v.                             )    Case No: 08 CH 00245
                                       )
DANIEL WIRT,                           )    Calendar: 15
                                       )
            Defendant.                 )

## NOTICE OF EMERGENCY MOTION

To:    See Attached Service List

        PLEASE TAKE NOTICE that on the 8th day of January, 2008, at 10:45 a.m./p.m.,
we shall appear before the Honorable _Judge Pantle_ presiding in room _2410_ of
the Richard J. Daley Center, or any other Judge presiding in his/her stead, and there present the
attached **Plaintiff, APS Aviation, LLC's Motion for Good Faith Finding**, a copy of which is
attached hereto and served upon you herewith.

                        Respectfully Submitted,

                        APS AVIATION, LLC

                        By: _____
                                    One of its Attorneys

Brandt R. Madsen
Michael S. McGrory
MADSEN, FARKAS & POWEN, LLC
20 South Clark Street, Suite 1050
Chicago, Illinois 60603
(312) 379-3444, phone
(312) 379-3443
Atty # 37934